Good morning. May it please the Court. As this Court stated in Brugere, quote, individual public policy judgments are no substitute for the rule of law and statutory language that, under the directions of Flores, Figueroa, and Staples, mandate us to presume the knowledge mens rea applies to all of the elements. In spite of this language, the District Court ruled that Section 2423A is a strict liability offense, even if the only basis for the charge is the victim's age, and that the prosecution is not required to prove the defendant had knowledge that the victim was a minor or that the defendant had the intent to commit a statutory rape offense. This ruling is inconsistent with Supreme Court precedent on statutory interpretation. The strong presumption that a knowing mens rea applies, the necessity of a guilty mind, and the rule of lenity. Mrs. Quick, let me ask. It's a very interesting argument to begin with, but it is inconsistent — your argument is inconsistent with every other circuit, right? I would disagree. I think there's a distinguishing factor here between those other circuits. Every one of them? What? Have you seen the Tyson case? Every one of the cases? The many cases they cite? Yes. All of the published cases. And all of those cases, those were prostitution cases. Those defendants were charged under the Prostitution Clause of 2423A. And in many of the circuits, I don't think all of them, but the majority of the circuits noted, well, we don't have the concerns here of no guilty mind. These defendants are put on notice because they're transporting someone for purposes of prostitution, which is in and of itself illegal. So, Ms. Quick, that gets right to the point of my question, and I think it may be a decisive issue in this case. And when the Supreme Court in Rehave said that possessing a culpable mental state regarding each element of the crime, when it talked about that, that only seemed to apply to otherwise innocent conduct. So I'd like to ask you about non-innocent conduct. Does it have to be criminal, such as prostitution? Or can it be immoral conduct that is not unlawful? I would state that it has to be criminal, not simply immoral. That would be a distinguishing fact between this case and all the other circuits. And the other circuits here, that— They dealt with prostitution. Correct. And here, it would otherwise be innocent conduct. It would simply be sexual activity. The statute doesn't require— Innocent meaning not unlawful. Exactly. You're familiar with Justice Alito's concurrence, right? I am. Okay. And you know the Supreme Court has cited it. Is it now the law of the land, his concurrence? It is not, Your Honor. Are you sure? Yes. Okay. Explain to me how it's not. I kind of think it is, candidly. I would — first note, it's cited in Flores-Figueroa, just kind of a side note to it. It's not an adoption of what Justice Alito is saying. All of these statutes that Justice Alito is using as examples, we're finding— Yes, he does. Justice Alito quotes this very statute word for word— Yes. —that this defendant was charged with, correct? Correct. Okay. Proceed. But citing to that concurrence is not then sweeping in and saying, we agree with Justice Alito that all of these statutes do not require a knowing mens rea. It's just an acknowledgment that there are circumstances, depending on the statute and how it's written, that context could indicate that a knowing mens rea is not required. And I would note, it was cited again in Rehave, but not for the proposition of context. It was cited simply for the point that Justice Alito made in that concurrence that if you have a very long statutory phrase, and it's knowing at the beginning, there might be a circumstance where we're going to say, okay, it doesn't apply to every single element that comes after that. I do very poor research. I just looked at the main Supreme Court cases that cite it. Do you know how many times they've cited that concurrence? My understanding is, and I'm not 100 percent confident on it, would be in Flores, Figueroa, and Rehave. The two landmark cases, they cited it. Yes. They did cite it. And that's what I saw. I saw those two. But I wondered if there were more where they had cited it. I don't believe so, but I'm not 100 percent. Thank you. No, and I'm not sure either. Go ahead. Yeah. But in Rehave, again, wasn't cited for the concern that we have here, which is says knowledge and says intent, and under Flores, Figueroa, it applies to every element after that. The government's sole basis here is context. But as Rehave lays out, and I think most clearly from the earlier cases, there are three tiers when we're talking about presumption of, or, yes, a presumption of mens rea. The lowest tier you have, regulatory offenses, where the court has said, if it's silent, we can assume that Congress didn't want to require a knowing mens rea. Tier above that is non-regulatory offenses. Even in silence, the court is going to presume that it needs a knowing mens rea. And then we have the third tier, which was in Rehave and which is here, where Congress explicitly includes an intent requirement, knowing and intent here. And that has the highest presumption, that knowledge applies to every element of the offense. So context, in and of itself, is not enough here to overcome that high presumption, especially when we also have to take into account what we discussed a little bit already, the need for a guilty mind. And that was what was crucial in Rehave. Okay. The other side cited one of them, and my clerk found a lot of them, where we say things like this, the State may legitimately protect children from self-destructive decisions reflecting youthful poor judgment that makes them the eyes of the law beneath the age of consent. We got a lot of statements like that. I can see you faced them, too. Yes. And this goes to Judge Gross' point about does it have to be really bad or just kind of bad or just morally bad? I think it goes to these cases are acknowledging that context in the situation where it's protection of children, that might weigh a little bit in favor of not requiring a knowing mens rea. None of those cases, as we can tell by the excitement video case, stand for the proposition that no matter how Congress drafted the statute, no matter how many times they said knowing or intent, we don't think that there needs to be an intent requirement in these child abuse or child sex abuse cases. Those cases don't hold that. And we know that because in excitement video, the Court said, yes, there is this context of protecting children, but that doesn't trump the statutory language here and the principles of statutory interpretation that we must follow when interpreting it. Isn't one of the other factors that comes into play the concept of a reasonable opportunity to observe? And wouldn't that, in fact, be here where, you know, the person doing this, obviously, in order to engage in sexual activity, would have had a reasonable opportunity to observe the child? I think the Court is referring to the footnote in excitement video that discussed that, but that point was rejected in Brugere. And in that circumstance, that is a little bit different statute, obviously. Now, the Brugere case is us, right? Yes. And we were rejecting this. Is it excitement video? Is that the Supreme Court? Excitement video is the Supreme Court. Well, we can't usually reject the Supreme Court, so tell me what verb you'd use. So the excitement video case, again, similar to what I, the point made before, doesn't note that, doesn't make an explicit holding or state, okay, this doesn't apply. My contacts always trumps, protection of children always trumps if there's face-to-face contact required. And that was acknowledged in Brugere. The Court, that was an argument made in Brugere, that in those circumstances, there's face-to-face contact, so there's kind of, it makes more sense to put the burden on the individual instigating the action. But there the Court said, still, looking at all of the other factors, including principles of statutory interpretation, and there, similar to here, the only thing that made the conduct criminal was the fact that the individual was not certain of the exact language, but incapacitated. So it was necessary to have the defendant, to prove beyond a reasonable doubt that the defendant had knowledge that the individual was incapacitated. Child here was 14, right? Correct. Would it matter if the child were 18 or 9? Does the age matter for your argument? For here, yes. The age does matter. But I mean, I didn't ask the question very well, but I think you know what I'm getting at. Does it matter if it's a really young child? No. Goes missing, is riding around with some unknown adult someplace? No. I mean, it would still, let me make sure I'm answering the question correctly. It would still be a requirement that the government has to prove it beyond a reasonable doubt under this statute as written. Now, I can state, based off of my experience, both handling these as a prosecutor and as a defense attorney, I don't know how often this is actually going to come up. Because most of the cases we have, as even in the unpublished case cited by the parties, it's quite clear that the defendant had knowledge that the individual was underage. So I think it's going to be an element, no matter what, whether it's going to be an element that can be seriously contested and argued, you know. I have to tell you, I thought just the opposite, that it's going to make it extremely difficult to prosecute these cases. Because the defendant is always going to testify. She said, you know, the victim said, I was overage, and it seemed to me it's going to make it a lot harder. It doesn't necessarily mean you're wrong, but . . . Right. I would disagree, and I would think it's up to the jury to decide that. This victim said she was 21, right? Right. She said she was 21 and I think 19 as well. And again, maybe a jury would reject that Mr. Moranara-Bravo didn't know that she was above 18. But again, when that is the deciding factor as to whether this conduct is criminal or not, the jury needs to make that determination. But that's credibility determination, isn't it? It could be, yes. And I would note, kind of talking about, again, statutory interpretation and what Congress would want, I think we can look to 2243, which is Congress's essentially statutory rape statute. There, they have an explicit defense where defendant only has to establish by a preponderance of the evidence that he or she believed the individual was over the age of 16 years old. So we do have an indication of how Congress would not treat these as strict liability offense as . . . We have to look at these statutes separately, though, don't we? Correct. But especially, I think, in this case, when the government's really main or sole argument is context, I think it's then fair game to look at the entire statutory scheme of when we're talking about, you know, offenses, sex offenses against children within the federal statutory scheme. If there are no immediate questions, I would reserve the remainder of my time. Very well. Thank you. Good morning. May it please the Court. Will Ripley on behalf of the United States. As has been alluded to already this morning, every circuit that has faced this question, the question of what does knowledge mean in 2243, excuse me, 2423, has determined that the knowledge requirement does not apply to the victim's age. Counsel, do any of those cases involve something other than prostitution or an act that was illegal? No. I do not believe they do. In other words, the two different theories. So this is a case of first impression, is it not, in our circuit? In that sense, it may be. Well, in all parts of it, it's in first impression in our circuit. I'm sorry? About all parts of this case is in first impression, right? Well, yeah. In this circuit, yes. Yeah. Okay. Thank you. Indeed. I thought that was the question. That's true. I'm sorry. I misunderstood. That was meant to be helpful. Go ahead. Well, I think the point is that no circuit has decided it with respect to the sexual activity alone. To that prong of the statute? Yes, sir. That's correct. Okay. REHAFE does not really inform this. The statute in REHAFE is structurally very different. The knowing requirement in REHAFE, of course, shows up in 924 and points to 922G and the various theories of prohibition that are there when it says that whoever knowingly violates 922G, et cetera, there's a whole list of them. Why does implorers figure out a control here then in terms of application of the word knowingly to all subsequently listed elements of the claim? Because of the favorable interpretation of the concurrence that we talked about in the previous minutes. Let me ask you this. What textual basis is there for applying the knowingly mens rea to the act of transporting but not to the status of the person as a minor? A textual basis? Aren't you asking us to read things into the statute that aren't there? I wouldn't phrase it that way, Judge Graz. What we're asking is that you interpret this statute consistent with the way it's been interpreted previously. Not of course exactly on point. Is there a textual basis for your argument? Under this statute, no. The argument is that . . . We're asking you to, I don't know about infer, but accept the intent of Congress. When Congress . . . some of the statutes that have addressed this, albeit under the prostitution prong. Don't we normally have to find an ambiguity before we look to congressional intent rather than the words of the statute? Normally. There is ambiguity here in the sense that we have other statutes, compare 2251 and 2252, and the interpretation of those two when it comes to knowing, 2251 being production of that, and to Judge Grunder's point earlier, the opportunity . . . the conduct reflects an opportunity to observe the victim in a production scenario, 2251, where it doesn't in 2252. Here in 2423, once again, to Judge Grunder's point, there is an opportunity in this scenario about transporting a minor. There's an opportunity to interact with and observe the victim. And so, if you take these statutes . . . if you take a step back and look at the statutes and their relationship with one another, I think there is your ambiguity, Judge Gras. It's not textually in this statute. Well, you have to end the literal meaning. It transports, knowingly transports, right? Yes. It knowingly applies to transports and not to the rest of it, right? That is the interpretation we are asking for, absolutely. Doesn't it contradict Flores-Figueroa, what the Supreme Court told us knowingly would apply to all subsequently listed elements of the crime? It doesn't contradict it in the sense that Flores-Figueroa, of course, was dealing with a statute having to do with identification documents. And so, in that sense, it's a different statute. Also, that case taken as a whole, including the affirmation of Justice Alito's concurrence, tells us that there are statutes for which that notion, that we take everything that there are statutes for which that's not applicable. Because of the special context. I'm sorry? Because of the special context. The special context, the purpose of the statute, what it's pointing at, the conduct it's looking to prohibit. The person that it's looking to protect, which in this case, of course, is minor children who don't always make the best decisions, Judge Benton referenced quite a bit of language that exists in the case law, both at the federal level and the state level, indicating that certain statutes are designed to protect minor children from themselves. In a general way, you can describe it that way. And for that reason... So why then do we have to apply the mens rea to the knowing transportation? Why isn't that just a strict liability crime as well? Well... I didn't know the child was in the back seat, therefore I'm innocent. That gets to... Why are we picking and choosing in terms of what the special context is of protection of children for some elements of the crime but not other elements of the crime? That gets to, I guess, the knowing does need to be there when it comes to transport because that does get to one of those fundamental basic notions in criminal law, which is someone needs to know they're doing an act for it to be a criminal act, oftentimes, certainly in this sense. And so I can't imagine a scenario, Judge Grouse, under which someone would be charged with this offense if they didn't have knowledge that the transportation was taking place. And I think that's why I'm struggling answering your question because factually, I cannot imagine a scenario that would result in criminal charges with a lack of knowledge of the transportation part. I didn't know I was crossing the state line. That, I think, would be treated much like the nexus requirement in 924 and 922 because it goes right to kind of the heart of the jurisdiction, federal government's jurisdiction to begin with. And Rahafe discusses that, that element, and how really it just sets it aside because it's purely jurisdictional. And I think probably a lack of knowledge of actually crossing the state line would fall there as well. I think the problem, in Flores-Figueroa, which I think I may have even written, there was a circuit split at the time. Several circuits, I think, including us, relied on the first antecedent rule to suggest that knowingly only modifies the first thing that follows that. But that was pretty clearly rejected in Flores-Figueroa and then again in Rahafe. That notion was, yes, I think abundantly clear that that notion was rejected in those two cases with interpreting those two statutes. And I think Rahafe is significantly different from a statutory structure standpoint than our statute at issue here, again, because the knowing comes essentially in the penalty part in 924, where it reads, anyone who knowingly violates this other section, 922G, in whatever theory it might be. That's a significant structural difference in the statute, and I think why Rahafe really didn't change. But less so in Flores-Figueroa. Indeed. Yes. Which is a point that Judge Graz, I think, has made quite a bit this morning. Yes. Structurally, it is that. Leave Justice Alito alone in terms of his concurrence, not him personally, but leave the concurrence alone. What other Supreme Court guidance do we have? We've talked about, I mean, I know Flores-Figueroa and Rahafe, something we've talked about that kind of supports your position, where they've sliced and diced the knowingly to be the next word, but not the next five words, but then the rest of the sentence, kind of. Right. The Supreme Court decisions, I don't know that I'll be able to cite any in particular, but what I will point to, Judge Benton, is the difference between the knowledge requirement as it pertains to 18 U.S.C. 2251 and 2252, which I alluded to earlier. They read similarly, those statutes, and they both deal, you know, in minor children. Of course, one, you know, the production of depictions of them, the other just simply possessing and receiving them. The difference between those two, I think, should inform this decision as well, in the same sense that here, someone violating the statute has an opportunity to interact with that minor. And so, they are charged with taking steps to not run afoul of that child being a minor. They don't have to know. Unless there are other questions, I think I'll yield the rest of my time. Thank you. Hearing none, thank you.  I'd like to follow up in talking about context, because I think that appears to be at least the gist of the government's argument, and would point the Court to the majority in Rehaeth. And in Rehaeth, there, one of the government's main arguments was, we look at legislative history. We look at the fact that courts have rejected this defendant's arguments for decades and Congress hasn't amended it or taken anything. And there, the Supreme Court refused to even decide whether legislative history could trump this very high burden and this very high presumption that a knowing mens rea is required. And here, the government is relying on something more wishy-washy than even the concept of legislative history, similar to Brugere, and the Court noted in Brugere. The government isn't pointing to legislative history or isn't able to produce like a report or anything where it indicates that Congress intended this to be a strict liability crime, or that Congress had earlier drafts where the knowing requirement was limited before the final version was adopted. That's not the government's argument. This was in the Original Man Act, right? Yes. This section was in the Original Man Act. It's changed throughout the years, I believe. But not much, right, in terms of the real offense? But you don't need it. You and I are field. Go ahead. Yeah. This just more general concept of protection of children is not enough to overcome the high presumption that knowing or in here, we even have stronger language than knowing but intent. The government's position would read that out of this statute. Counsel, under normal rules of construction, do we even have to get to the point of applying a presumption if the text of the statute is plain? I don't think so. I do think the one thing that gives me a little bit of pause in why I'm addressing it is some of the footnotes we talked about where they do discuss context. But again, those cases and those footnotes don't say when the language of the statute is so broad or so clear that we can say, yes, but this is about protection of children. So read those mens reas out of the statute that Congress has put in. Ms. Quick, were there any other justices who joined Justice Alito's concurrence in his discussion of 2423 and or did the majority respond to that? I'm not certain. My instinct is to say Justice Thomas joined it, but I am not 100 percent confident in saying that. The reference to it in Flores-Figueroa just is Justice Alito notes the inquiry into a sentence's meaning is a contextual one. No special context is present here. That is what the majority said about Justice Alito's concurrence. Well, it's cited favorably in the original case, too. The majority cites it. What's his concurrence to the first time? In Flores-Figueroa? That's his original one. Okay. Now, in Rehafe. Now, I've got my cases straight. In Rehafe, it does cite. Do you have the language of what they said there about it? In Rehafe? I have the pin cite, I believe. Okay. I thought maybe you had the language. I'm sorry. I don't know if I have the page in front of me, but in Rehafe, it was, again, simply for, oh, nope, wrong pin cite. It was simply for the idea of the concept that, not context, but if a clause is long enough, maybe we aren't going to say knowing applies to the 50th phrase down the line. And I would note, in Rehafe, Justice Alito's dissent, which is obviously, you know, not adopted or referenced by the majority, was a complaint generally about context, and that he thought the majority didn't consider that enough when interpreting 922G. If there are no further questions, I would ask this Court reverse and remand for a trial with all of the elements as detailed by the statute. Thank you. Very well. It's an interesting issue. We appreciate your appearance and briefing.